UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| RONNIE DEAN BRAWNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:14-cv-110 JAR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Ronnie Dean Brawner's ("Brawner") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*

### I. Background

On May 12, 2011, Brawner protectively filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*, alleging disability beginning March 15, 2008. (Tr. 195-206.) The Social Security Administration denied Brawner's claim on July 19, 2011. (Tr. 92-93.) He filed a timely request for a hearing before an administrative law judge ("ALJ") on July 25, 2011. (Tr. 117-18.) Following a hearing on March 7, 2013, the ALJ issued a written decision on April 5, 2013, upholding the denial of benefits. (Tr. 12-21.) Brawner then requested review of the ALJ's decision by the Appeals Council on May 9,

2013 (Tr. 7), which request was denied on July 7, 2014. (Tr. 1-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Brawner filed this appeal on July 31, 2014. (Doc. No. 1.) The Commissioner filed an Answer. (Doc. No. 10.) Brawner filed a brief in support of his complaint (Doc. No. 12) and the Commissioner filed a brief in support of the answer. (Doc. No. 17.) Brawner did not file a reply.

## II. Decision of the ALJ

The ALJ determined Brawner had not engaged in substantial gainful activity since March 15, 2008, the alleged onset date. (Tr. 14.) The ALJ found Brawner had the severe impairments of mild scoliosis causing back, hip and leg pain, bilateral carpal tunnel syndrome, status post left side release and status post left rotator cuff repair (Tr. 14-16), but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16.)

After considering the entire record, the ALJ determined Brawner had the residual functional capacity ("RFC") to perform light work, except the climbing of ladders, ropes or scaffolds. Id. The ALJ determined that Brawner should avoid hazards including excessive vibration and unprotected heights, and should be limited to occasional exposure to climbing ramps and stairs, stooping, crouching, crawling, and reaching above the shoulder level with the left upper extremity. Id. The ALJ found there are jobs that exist in significant numbers in the national economy that Brawner can perform, such as security clerk and order caller. (Tr. 19-20.) Thus, the ALJ concluded Brawner has not been under a disability from March 15, 2008, through the date of the decision. (Tr. 20.) Brawner appeals the ALJ's decision, arguing that the ALJ's evaluation failed to recognize Brawner's severe mental impairment and gave insufficient weight to the opinion of Dr. Benny Till, Brawner's treating physician.

### III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

#### A. Hearing Testimony

The ALJ held a hearing in this matter on March 7, 2013. Brawner testified and was represented by counsel. Tyra A. Bernard-Watts, Ph.D., CRC, vocational expert, also testified at the hearing. (Tr. 28.)

##### 1. Brawner's testimony

At the time of the hearing, Brawner was 36 years old and living in government housing. (Tr. 34.) He lives alone but has visitation with his 7-year old son every other weekend. Id. Brawner completed the ninth grade in school. (Tr. 35.) He earned a commercial driver's license (CDL) in 1999 but lost it after a DWI. Id.

Brawner was injured falling through a roof while doing some work for his landlord in 2008, and stopped working thereafter. (Tr. 36-37, 39-40.) He underwent multiple surgeries following his injuries, including one in 2006 and one in 2008, and continued to suffer nerve damage in both arms. (Tr. 51.) He had a left carpal tunnel release in 2010. Id. At the hearing, Brawner testified that he suffers from pain in his arms, hands, shoulders and neck. (Tr. 38.) The pain also causes problems with concentration. Id. Brawner reports that his hand, arms, and shoulder "hurt[] all the time," which affects his ability to concentrate and "deal with people." (Tr. 38.) He has difficulty writing legibly due to his arm and shoulder injuries. Id. In addition to his hand, arm, and shoulder injury, Brawner was "shot in [his] left leg" and "hit [his] back" while working at a sawmill. (Tr. 42.) These injuries cause him pain in his back, left hip, and leg. Id. Brawner experiences pain daily. Id.

Brawner's pain precludes him from sitting through an entire movie. (Tr. 45.) Brawner has the ability to reach out in front of himself, but cannot reach overhead without severe pain. (Tr. 47-48.) He states that his "hands burn and hurt all the time," and that he "can't hardly lift them." (Tr. 49.) He needs assistance to button his shirt. (Tr. 49.) Brawner is able to drive, but testified that he has to "stop frequently and stretch [his] legs." (Tr. 54.)

Brawner also testified that he suffers from depression and anxiety, is very nervous around people, and does not go out in public. (Tr. 43-44.) He has difficulty around crowds and in social situations. (Tr. 42-43.) He requires the accompaniment of a family member or friend to visit the grocery store. (Tr. 43.) He reports frequent panic attacks and rarely goes out in public. (Tr. 43-44.) Brawner does not see a psychiatrist or counselor, although he reports that he's "been trying" to do so. (Tr. 52.) He has a diagnosis of alcohol dependence and identifies as a recovering alcoholic. Id. Brawner testified to a sober date of October 15, 2008, but he also admitted to being intoxicated during a car collision in 2010 in which he was a passenger; he testified that he continues to drink as an "occasional thing." (Tr. 58.)

Brawner takes Neurontin to help with nerve pain and Celexa for depression and anxiety, and to assist with "mood swings." (Tr. 47, 51.) Brawner was receiving prescription narcotics from a pain clinic, but was terminated for violation of a narcotics agreement following a failed drug screening. (Tr. 54.) Brawner explained that the screening failure was due to narcotics distributed during a surgery on his hand; however, he failed the screening on at least three separate occasions. (Tr. 54-55.) Brawner's criminal convictions consist of two DUIs and one assault "years ago." (Tr. 56.)

Brawner has not worked for pay since early 2008. (Tr. 36.) He was denied at least one job for which he applied because of his preexisting physical injuries. (Tr. 37.) He stopped looking for work sometime in 2008. (Tr. 38.)

### 2. Testimony of vocational expert

Vocational expert Dr. Tyra Watts also testified at the hearing. In a hypothetical, the ALJ asked Dr. Watts to assume a person of the same age, education, and work experience as Brawner who is able to perform at the light exertional level with the following limitations: never climbing ladders, ropes, or scaffolds; never crawling; only occasional above-shoulder-level reaching with the left upper extremity; and should avoid concentrated exposure to excessive vibration, use of hazardous machinery and exposure to unprotected heights. (Tr. 61-62.) This hypothetical individual could frequently climb ramps or stairs, frequently balance, stoop, crouch, and kneel. (Tr. 61.) Dr. Watts determined that such a person would be able to perform a job such as security clerk, Dictionary of Occupational Titles ("DOT") 209.367-206, SVP of 2, light work. (Tr. 62.) Dr. Watts estimated 31,070 such jobs being performed in the state of Missouri. Id. In addition, such a person could perform the job of order caller, DOT 209.667-014, SVP of 2, light work. Id. There are approximately 68,140 such jobs being performed in the state of Missouri. Id.

In a second hypothetical, the ALJ asked Dr. Watts to assume the same factors identified above. However, this individual could only occasionally climb ramps or stairs, stoop, crouch, or crawl. This individual could frequently handle, feel, and finger with the left upper extremity. (Tr. 62.) Dr. Watts testified that the jobs reported in the first hypothetical would remain available. (Tr. 63.)

In a third hypothetical, the ALJ asked Dr. Watts to assume the same limitations as in the second hypothetical. Id. However, the ALJ asked Dr. Watts to assume that the individual could

5

handle, finger, and feel with the left upper extremity only occasionally. Id. Dr. Watts determined that such a person would be able to perform a job such as furniture rental consultant, DOT 295.357-018, SVP of 2, light work. Id. Dr. Watts estimated 7,310 such jobs are being performed in the state of Missouri. Id. In addition, such a person could perform the job of investigator, dealer accounts, DOT 241.367-038, SVP of 2, light work. Id. 1,720 such jobs are being performed in the state of Missouri. Id.

Brawner's attorney altered the hypotheticals in his questioning of Dr. Watts. Referring back to the first hypothetical, Brawner's attorney questioned whether Dr. Watts's analysis would change if overhead reaching with the left extremity was impossible and if reaching in all other directions could only rarely be undertaken, and if reaching, fingering, feeling, and grasping with the right extremity was limited to occasional. (Tr. 64.) Dr. Watts responded that under this hypothetical, the jobs suggested would be precluded. Id.

Brawner's attorney then asked Dr. Watts to return to the original hypothetical, but suggested an additional limitation: the hypothetical individual could never interact with the public and could maintain only rare interactions with co-workers and supervisors. Id. Dr. Watts responded that for such an individual, work would be precluded. Id. Dr. Watts testified that work would also be precluded in the hypothetical if interaction with the public could occur only rarely, and interaction with co-workers and supervisors only occasionally. (Tr. 65.)

### B. Medical Records

The ALJ summarized Brawner's medical records at Tr. 16-19. Relevant medical records are discussed as part of the analysis.

**IV.    Standards**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v.

Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the

claimant." Meyerpeter v. Astrue, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
> (2) The education, background, work history, and age of the claimant;
> (3) The medical evidence given by the claimant's treating physicians;
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
> (5) The corroboration by third parties of the claimant's physical impairment;
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

### V. Discussion

In his appeal of the Commissioner's decision, Brawner raises two issues underlying the ALJ's determination of Brawner's RFC. First, Brawner alleges the ALJ erred in not finding Brawner's combined depression, anxiety, and agoraphobia a severe impairment. (Doc. No. 12 at

11.) Second, Brawner alleges the ALJ erred in assigning no weight to the medical opinion of Dr. Till, Brawner's treating physician, in determining his RFC. Id. Upon review, the Court finds substantial evidence in the record to support the ALJ's decision.

**Severe Mental Impairment**

Brawner first argues that the RFC assigned by the ALJ is erroneous because the ALJ did not find Brawner's mental limitations to be a severe impairment. (Doc. No. 12 at 11.) The Commissioner responds that the ALJ properly determined that Brawner's mental impairments cause only mild restrictions in each of four areas of functioning, and therefore do not constitute severe impairments. (Doc. No. 17 at 4.) Here, the Court finds the ALJ's determination regarding the severity of Brawner's condition is supported by substantial evidence in the record as a whole.

At step two of the sequential process, the ALJ must determine if the claimant has a severe mental or physical impairment that has or is expected to last twelve months or will result in death. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(i)-(ii); 416.909, 416.920(a)(4)(i)-(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007); 20 C.F.R §§ 404.1520(c), 416.920(c). Basic work activities mean the abilities and aptitudes necessary to do most jobs, including physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b); 416.921(b). The claimant bears the burden of establishing that his impairment is severe. Kirby, 500 F.3d at 707 (citing Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000)). Although severity is not an onerous requirement to meet, it is also "not a toothless standard." Id. at 708.

In determining a claimant's impairment and resulting RFC, an ALJ must give a treating physician's opinion controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and not inconsistent with the other substantial evidence in the record. Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009). See also Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005). However, an ALJ is not necessarily required to find a severe impairment simply because a medical professional diagnoses the claimant with depression. See Buckner v. Astrue, 646 F.3d 549, 557 (8th Cir. 2011). Rather, the ALJ must evaluate the record as a whole to determine whether the depression (or other diagnosed condition) impacts a claimant's ability to work. Id.

Brawner was diagnosed with and received treatment for anxiety, depression, and agoraphobia. (Tr. 533, 535, 669.) In June of 2012, a licensed psychologist concluded that Brawner met DSM IV-TR diagnostic criteria for Major Depressive Disorder, Generalized Anxiety Disorder, and Social Phobia, and assigned him a GAF score of 43.[1] (Tr. 668-669.) On previous occasions, Brawner was assigned a GAF score of 52 by other treaters.[2] (Tr. 533, 535.) The ALJ determined that "[Brawner's] medically determinable mental impairments of bipolar disorder, depression, anxiety, post-traumatic stress disorder and alcohol dependence in remission . . . do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (Tr. 15.) The ALJ considered that "the claimant has mild limitation" in the first three broad functional areas set out in the disability regulations (daily living, social functioning, and concentration persistence, or pace), and noted that Brawner had

---

[1] The GAF, or Global Assessment of Functioning, is a numeric scale ranging from zero to one hundred used to rate social and psychological functioning. Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. Am. Psychiatric Ass'n 1994) (DSM—VI). A GAF of 41 to 50 indicates the individual has "[s]erious symptoms ... or any serious impairment in social, occupational, or school functioning...." Id.

[2] A GAF of 51 to 60 indicates the individual has "[m]oderate symptoms ... or moderate difficulty in social, occupational, or school functioning...." DSM–IV at 32.

11

experienced no episodes of decompensation of an extended duration. Id. The ALJ reached his conclusion by giving "great weight to the opinions of the State agency medical consultants," including psychological consultant Marsha Toll. (Tr. 16, 521-531.) Toll wrote that "[Claimant] does have [a diagnosis] of anxiety and depression," but she discounted this diagnosis because Brawner "has not sought counseling or therapy." (Tr. 531.) Conversely, the ALJ gave "no weight to Dr. Till's opinion regarding the claimant's mental capacity." (Tr. 16.)

The ALJ noted that Dr. Till's opinion regarding Brawner's mental condition is outside of his area of specialty, and does not take into account Brawner's alcohol abuse, including his violation of his narcotics agreement (involving multiple positive drug screens). (Tr. 16.) The ALJ's findings are further supported because, despite Dr. Till's diagnosis, Brawner had no history of psychiatric treatment or hospitalization, and he did not seek mental health treatment or counseling during a two-year period following his initial diagnosis. (Tr. 456, 492-95, 531.) Moreover, Brawner's mood and affect were noted to be normal and appropriate by numerous pain management professionals during that same timeframe. (See, e.g., Tr. 536, 545, 549, 555, 559, 562.) An absence of substantial treatment for mental health issues also supports the ALJ's finding that Brawner's mental impairment is not severe. Williams v. Sullivan, 960 F.2d 86, 89 (8th Cir. 1992).

The ALJ did not substantially address the weight he gave to the opinion of Dr. Bridget Hurt, Licensed Psychologist, who evaluated Brawner's mental condition in June of 2012 and assigned a GAF score of 43. (Tr. 669.) However, Brawner was not taking any psychotropic medication when Dr. Hurt conducted her evaluation. (Tr. 668.) Moreover, while a GAF score of 43 suggests serious limitation, Brawner's previous evaluations produced notably higher GAF scores. (Tr. 533, 535.) And the Eighth Circuit has repeatedly held that a GAF score alone is not

controlling. See Halverson v. Astrue, 600 F.3d 922, 931 (8th Cir. 2010) (citing Juszczyk v. Astrue, 542 F.3d 626, 632–33 (8th Cir. 2008) (an ALJ's decision not to rely on the treating physician's GAF assessment is supported by substantial evidence where contradictory medical evidence existed); Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 666–67 (8th Cir. 2003) (an ALJ's decision that the GAF score did not appear to reflect the claimant's abilities was supported by the record). Finally, while Dr. Benny Till's treatment records between August 2011 and February 2013 include conclusory checkmark boxes indicating diminished mental capacity, they do not include complaints related to depression or anxiety, and they consistently state a "normal mood and affect." (Tr. 709, 713, 720.) The previously assessed GAF scores of 52 and the fact that Brawner was not taking medication during the 2012 evaluation (and did not begin a regimen of further treatment following it) support the ALJ's apparent decision to give little weight to the June 2012 GAF score.

After a discussion of the medical evidence regarding Brawner's depression, anxiety, and agoraphobia, the ALJ determined these impairments do not cause more than minimal limitation in his ability to perform basic mental work activities and are therefore nonsevere. (Tr. 15.) This Court's standard on review is not whether substantial evidence exists in opposition to the ALJ's conclusion, but whether substantial evidence exists to support it. Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010) (internal citation omitted); Krogmeier, 294 F.3d at 1022. Moreover, even if the Court "finds it is possible to draw two inconsistent positions from the evidence," "[if] one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010) (internal citations and quotation marks omitted). For the reasons stated above, the Court concludes that substantial evidence exists to support the ALJ's finding and therefore affirms the ALJ's conclusion.

**Weight to Dr. Till's Opinion**

Next, Brawner contends the ALJ did not give proper weight to the opinions of Brawner's treating physician, Dr. Benny Till, as they related not only to Brawner's alleged mental impairments but to Brawner's disabilities generally. Brawner further argues that Dr. Till's "treatment notes" supported his findings, and that the "ALJ failed to provide good reasons for giving little weight to Dr. Till's opinion." (Doc. 12 at 15.)

As noted above, an ALJ must give a treating physician's opinion controlling weight if it is well-supported by medical techniques and not inconsistent with the other substantial evidence in the record. Davidson, 578 F.3d at 842. Additionally, "[w]hether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). However, there is no deference for a treating physician's opinion that a claimant is disabled or cannot be gainfully employed because it invades the province of the Commissioner on the ultimate disability determination. House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007). Furthermore, an ALJ is entitled to assign the opinions of a treating physician little weight where such opinions are conclusory opinions contradicted by other objective medical evidence. See Stormo v. Barnhart, 377 F.3d 801, 805–06 (8th Cir. 2004); Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001); Social Security Ruling 96–2p.

In previous visits, Dr. Till had provided treatment for Brawner's ongoing shoulder, arm, back, and hand pain related to carpal tunnel syndrome, neuropathy, arthritis, and Brawner's 2006 and 2008 surgeries. (Tr. 722, 726, 729, 730, 727.) Dr. Till issued opinions on Brawner's work capabilities on February 11, 2013. (Tr. 736-737.) In addition to his diagnoses regarding Brawner's mental condition, Dr. Till made general determinations about Brawner's work

14

capacity, and completed a form comprised of checked boxes with minimal corroboration. (Tr. 736-737.) A physician's checkmarks on a form are the precise type of conclusory opinions that carry little evidentiary value when unsupported by medical evidence or elaboration. See Anderson v. Astrue, 696 F.3d 790, 793-94 (8th Cir. 2012) (internal citation omitted); see also Stormo, 377 F.3d at 805–06; Hogan, 239 F.3d at 961; Social Security Ruling 96–2p.

Here, the ALJ explained that he gave "no weight to [Dr. Till's opinion] because it is not supported by objective evidence and it is inconsistent with the record as a whole." (Tr. 19.) The ALJ determined that Dr. Till's opinion as to Brawner's ability to work, "[a]s an opinion on an issue reserved to the Commissioner . . . is not entitled to controlling weight and is not given special significance." (Tr. 19.) Regarding Dr. Till's *Medical Source Statement* assessment, the ALJ explained that "Dr. Till did not provide an explanation for this assessment or any specific functional limitations that prevented the claimant from working." (Tr. 19.) Moreover, Dr. Till's assessment was largely based on Brawner's subjective reports to him, justifying the ALJ's decision to assign the assessment less weight. Id. See also Gonzales v. Barnhart, 465 F.3d 890, 895-896 (8th Cir. 2006) (ALJ could give less weight to medical opinion because it appeared to be based solely on claimant' subjective complaints).

Additionally, Dr. Till's opinion is inconsistent with the objective medical evidence and treatment records. As the ALJ acknowledged, Brawner has a history of shoulder impairment and he did undergo surgeries in 2006 and 2008. (Tr. 18.) But a number of more recent physical evaluations suggest that Brawner has largely recovered from those injuries. Brawner was released to return to work following surgery in 2008 with only mild restrictions. (Tr. 408.) As the ALJ noted, Brawner received a progress note in June 2008 indicating that he had almost full range of motion. (Tr. 18, 407.) Plaintiff's subsequent complaints of pain were not generally

15

accompanied by corroborating evidence upon physical evaluation. (Tr. 480-82, 491-95, 700.) Moreover, the ALJ properly considered the routine and conservative treatment prescribed to Brawner (generally limited to mild pain medication, application of heat, and exercise) to be objective evidence that conflicted with Dr. Till's conclusory opinions. (Tr. 18.) See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (conservative treatment supported the ALJ's adverse credibility determination). Indeed, Dr. Till's own recommendations were heavily reliant on physical exercise, and Dr. Till gave Brawner a list of exercises so that Brawner can do his "own physical therapy." (Tr. 53.)

When a treating physician's opinion is inconsistent with other substantial evidence in the record, the ALJ is entitled to give it less weight. Hogan, 239 F.3d at 961. Therefore, the ALJ was within his discretion to determine that Dr. Till's opinions were not entitled to controlling weight. (Tr. 19.) Here, the Court finds the ALJ's treatment of the medical opinion evidence is supported by valid reasons and substantial evidence in the record as a whole.

## VI. Conclusion

For these reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate judgment will accompany this Order.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

Dated this 30th day of September, 2015.